UNITED STATES PATENT DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



URVASHI BHAGAT

    Plaintiff,

v.

UNITED STATES PATENT and
TRADEMARK OFFICE, and ANDREI
IANCU, in his official capacity as
Under Secretary of Commerce for Intellectual
Property and Director of the U.S. Patent and
Trademark Office,

    Defendant.

Civil Action No. 1:20 cv1515 CMH/MSN

**JURY TRIAL DEMANDED**

Declaratory, injunctive, and
monetary relief sought

## COMPLAINT

Plaintiff Urvashi Bhagat files this Complaint against the United States Patent and Trademark Office and Andrei Iancu, in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("PTO"), and alleges as follows:

### NATURE OF THIS ACTION

1. This civil action is brought pursuant to 35 U.S.C. § 145 by the inventor of U.S. Patent Application No. 13/877,847 ("the '847 application"), Ms. Urvashi Bhagat, against the Director of the PTO seeking a judgment that Ms. Bhagat is entitled to a patent for the invention specified in claims 82-89, 91-104, 107-110, and 112-120 of the '847 application. These claims are the subject of a decision by the Patent Trial and Appeal Board ("PTAB") of the PTO refusing to issue a patent to Bhagat based on allegations of indefiniteness, improper dependency, obviousness, and lack of unity of invention.

2. The PTO has acted in bad faith repeatedly applying numerous overlapping improper rejections and frivolous "objections" on every patent claim, such as lack of unity of invention, product of nature, abstract idea, double patenting, lack of written description supporting the claims, indefiniteness, improper dependency, lack of novelty, and obviousness while failing to even make a prima facie case of obviousness in several claims. The PTO disregarded the repeated submissions of arguments and evidence fully rebutting the objections. Several improper final rejections were issued. Ms. Bhagat had to file numerous administrative petitions for supervisory review at the PTO. Some of the objections/rejections were eventually reversed—confirming that they were frivolous—but after multiple repeat petitions were filed for higher and higher level of review at the PTO at great cost and loss of time. The PTO's bad faith continued in appeal review at PTAB, such that 99% of arguments and 100% of the evidence was disregarded in the appeal review and a decision contrary to PTAB's own precedential opinions was issued. Ms. Bhagat submitted several petitions for review by the Chief Administrative Patent Judge due to misconduct by the panel in appeal review requesting a new or expanded panel, which were either dismissed without proper review or not answered, rather the Chief Judge also made false statements in his decision contradicting the record.

3. The PTO actions have resulted in protracted prosecution and loss of eight years damaging Ms. Bhagat's company and her livelihood, and now the current civil action threatens more damage to Ms. Bhagat's business and life. Therefore, as part of this action Ms. Bhagat seeks damages from the Defendant.

4. Ms. Bhagat has committed herself to researching role of lipids in health and disease, in particular omega-6 fatty acids and antioxidants including minor lipids found in plants (e.g., polyphenols). She has made important discoveries on precise dosage requirements of and

interactions among these substances with profound health effects, such that tailored dosages (specified delivery) have the potential of mitigating chronic diseases and acute health events (such as strokes and heart attacks) and susceptibility to infections. These discoveries are the foundation of her inventions directed to dosages of these substances and methods of tailoring the same by demographic factors. The inventions described and claimed in the '847 application are innovative compositions and methods of tailoring formulations comprising omega-6 fatty acids and antioxidants including polyphenols in the broadest embodiments with additional features in narrower embodiments. The broadest claims "provide a dosage from 1 to 40g of omega-6 fatty acids and from 25mg to 10g of antioxidants, and wherein the antioxidants comprise one or more polyphenols in the dosage of greater than 5mg" via "one or more nutritional formulations for an individual" with instructions for suitable intake of the formulations.

5. The claimed features in the '847 application remain poorly understood in the art even today. Many publications have taught reduced intake of omega-6 fatty acids, such as less than 1g/day, and some skilled persons even label high omega-6 containing foods as "poison" at "any amount," and many publications have taught random or high intake of antioxidants and polyphenols, including the publications cited by the PTO. Further, these substances are randomly sold across the nation (US) and around the world. In contrast, the subject patent application teaches that omega-6 fatty acids are critical for health and their deficiency potentiates mechanisms that result in adverse health and adverse acute events, and that antioxidants affect the metabolism and requirement for omega-6 fatty acids and that total antioxidant intake including polyphenols must also be restricted for health.

6. Dosage is distinct from concentrations, but dosage is relevant to composition as it determines how much of the active ingredient is present in how much of the formulation

determined for administration; and dosage takes factors such as subject's age, gender, diet, medical conditions into account, which are expressly recited in several of the subject claims. Correct dosage of omega-6 also eliminates toxicity from excess omega-6, which prior art has erroneously taught to counter with excess omega-3 fatty acids.

7. Neither the Dietary Guidelines for Americans published by US Department of Health and Human Services nor any other major regulatory body has considered dosing of total omega-6 fatty acids and total antioxidants including polyphenols as taught in the subject patent application.

8. The subject innovations are exceptionally important for public health including in preventing chronic diseases and infections, such as coronavirus. Had the patent been granted on time it would have helped Ms. Bhagat raise venture capital for her company and it would have helped to effectively implement the innovations for public benefit mitigating the adversity of the current pandemic.

9. In rejecting the claims of the '847 application, the examiner and the PTAB made incorrect assumptions about what a person of ordinary skill in the art would have found obvious, disregarding the evidence of opposite teachings submitted and what is in plain sight that these substances are routinely and randomly marketed across the nation and around the world without dosing regimens.

10. The PTO has held the scope of the inventions against the inventor, at great cost to public health and the nation. PTO prefers to issue extremely narrow patents (apparently to increase its revenue and protect big businesses) particularly in nutrition, which cause misinformation and disinformation in the art as each party seeks to hype its patent protected products and methods, leading to chaos in the nutrition art. For example, PTO has issued about 135,000 patents

directed to various narrow compositions and methods comprising fatty acids, i.e., roughly 2.7 million years of monopolies (@ 20 years/patent) instead of granting a proper 20-year patent as claimed to eradicate the problem. PTO has tried to force Ms. Bhagat to accept an extremely narrow patent which would have compromised the innovations. In other words, PTO is making public ill to boost its revenues.

11. The defendant has failed to understand that the opportunity to properly nurture these innovations may be permanently lost if this patent is not granted, because without the patent grant market forces are unable to address this over a century old complex problem, because of economic disincentives, and future applicants will not be able to patent these inventions because now they are genuinely anticipated/obvious from the Bhagat disclosures. The loss of the nurturing of these inventions via patent grant will be insurmountable loss to humanity.

12. For the aforementioned reasons Ms. Bhagat has elected to have remedy by civil action against the PTO and the Director of the PTO in the United States District Court for the Eastern District of Virginia as authorized by statute. Ms. Bhagat is entitled to a patent for the invention claimed in the '847 application, and the Court should order the Director to issue one and grant additional declaratory, injunctive, and monetary relief.

## PARTIES

13. Plaintiff Urvashi Bhagat is the inventor of several patent applications pending before the PTO and one issued patent (granted 10 years after pendency wiping out significant patent term). The applications and the patent are assigned to Asha Nutrition Sciences, Inc. ("Applicant" or "Appellant"), a corporation organized and operating under the laws of California. The '847 application as filed is attached herewith as Exhibit A. The claims at issue (pending claims) are attached herewith as Exhibit B.

14. Defendant United States Patent and Trademark Office is the federal agency responsible for examining patent applications and for issuing U.S. patents. The PTO's headquarters is located in Alexandria, Virginia.

15. Defendant Andrei Iancu is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, acting in his official capacity. The Director is the acting head of the PTO and is responsible for superintending or performing all duties required by law with respect to the granting and issuing of patents.

## JURISDICTION AND VENUE

16. This Court has jurisdiction and venue pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1361 and 35 U.S.C. § 145 (as amended by the America Invents Act on September 16, 2011).

17. Federal treaty at issue is Patent Cooperation Treaty (PCT) the international patent law treaty, concluded in 1970, providing a unified procedure for filing and examining patent applications to protect inventions in each of its contracting states, of which United States is one. The '847 application is a PCT application that entered national patentability examination at the USPTO under 35 USC 371.

18. This action seeks monetary relief under the Fifth Amendment's Takings Clause, U.S. Const. amend. V.

19. Venue is proper in this district under 35 U.S.C. § 145, which provides that "[a]n applicant dissatisfied with the decision of the Patent Trial and Appeal Board in an appeal under section 134(a) may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the United States District Court for the Eastern District of Virginia if commenced within such time after such decision, not less than sixty days, as the Director appoints."

20. The PTAB's decision on Bhagat's appeal of rejections against the claims of the '847 application, pursuant to 35 U.S.C. § 134(a), issued on February 20, 2020 and decision on Request for Rehearing issued on October 7, 2020 are attached as Exhibits C and D.

21. This Complaint is timely filed within sixty-three days of the PTAB's last decision. An appeal has not been taken to the United States Court of Appeals for the Federal Circuit.

## BACKGROUND

### A. THE STATE OF THE ART

22. "Dosage" is a universally understood term by all people working in the health care profession as well as all individuals who are in involved in health or disease maintenance and treatment to mean "specified amount of a substance for ingestion at one time or regularly." Oxford Dictionary defines dosage as, "The size or frequency of a dose of a medicine or drug. 'a dosage of 450 milligrams a day." Further, 10s of 1000s of multi-dose products are marketed around the nation where packaging instructions specify the amount of formulation to be ingested to achieve the recommended dosage (e.g., cough syrups) confirming that the term "dosage" is extremely well known in the art.

23. Requirements and dosage of omega-6 fatty acids for health is not well understood, routine, or purely conventional step in the prior art. Prior art at large teaches reduced intake of omega-6 fatty acids and teaches away from instant Claims 82 and 99. For example, Lands WE, Ann. N.Y. Acad. Sci. 1055: 179–192 (2005) teaches less than of 0.5% of calories from omega-6, which equals less than 1g/day for 1800 calorie diet. Similarly, the formulations taught by the reference cited by PTO, US 2008/0213239 ("Morris") either comprise zero omega-6 (formulations 1-6) or its dosage is significantly less than 1g (e.g., 70mg γ-linolenic acid in formulations 7-27, i.e., 7% of "from 1g" in present claims); whereas reference cited by PTO US

7

2007/0166411 ("Anthony") states linoleic acid is omega-3 and α-linolenic acid is omega-6 (¶49, ¶51) (contrary to the conventional nomenclature) and its exemplary formulations in Tables 2 and 7 comprise 0.2-0.4g α-linolenic acid [omega-6]. In contrast, the present claims require at least 1g of omega-6 fatty acids, based upon the individual, or demographic factors in some claims.

24. Requirements and dosage of antioxidants for health is not well understood, routine, or purely conventional step in the prior art. Antioxidants are randomly recommended in prior art without teaching dosages and context, as evidenced by Niki, "Lipid peroxidation: Physiological levels and dual biological effects" Free Radic Biol Med. 2009 Sep 1;47(5):469-84. True to form, PTO's citation *Morris* identifies close to 500 antioxidants over 24 paragraphs (¶42, ¶47, ¶48, ¶49, ¶62-68, ¶70-71, ¶89-90, ¶106-107, ¶128, ¶142, ¶169-170, ¶173-174, ¶185), and yet leaves the list open-ended, stating in ¶128 "Also suitable is an anti-oxidant as described in U.S. Patent Publication No. 2007/0275932." Further, *Morris'* dosages of antioxidants add up to significantly more than 10g restriction in present claims, e.g., 31g/day (formulation #27 is about 15,000mg/day (three times daily ¶164) and claims 1+2+3+4+9+13+18+19 yields antioxidants over 24,000mg/day). Yet *Morris* has not taught or suggested restriction of dosage of total antioxidants. Whereas *Anthony* is silent with respect to dosage of any antioxidants.

25. Requirements and dosage of polyphenols is not well understood, routine, or purely conventional step in the prior art, as evidenced by Specification (¶41, ¶90-91, and rest of the disclosure) and Mennen, "Risks and safety of polyphenol consumption" Am J Clin Nutr 2005;81(suppl):326S–9S. Similarly, *Morris* never suggests any dosage of polyphenols whatsoever, or the need to restrict them, instead *Morris* identifies an infinite list of antioxidants, of which one is polyphenols, in ¶128, and none of *Morris'* examples include any polyphenols.

26. Thus, none of the prior art including the references cited by the PTO during examination

8

would have led one of skill in the art to practices dosages of omega-6 and antioxidants including polyphenols as required by the present claims.

27. Many variables including antioxidants modulate the metabolism of various fatty acids and it is difficult for consumers to calibrate on a daily basis the demands of the body for the bioactive substances as evidenced by Bhagat et al., "Potential role of dietary lipids in the prophylaxis of some clinical conditions" Arch Med Sci 2015; 11, 4: 807–818. The discoveries and state of the art led to the inventions disclosed in the '847 PCT application.

### B. THE '847 APPLICATION

28. This PCT application entered national patentability examination at the PTO under 35 USC 371 and CFR 1.495 on April 4, 2013. The Specification and claims are directed to multi-part and multi-dosage kits of nutritional formulations facilitating the restriction of the dosages of omega-6 to 1-40g and antioxidants to 25mg-10g including the dosage of polyphenols for intake by subjects because these nutrients are poorly understood in the art and are randomly marketed and ingested with grave public health consequences leading to numerous chronic diseases and weakened immune system rendering public susceptible to infections. Additional features and methods of tailoring are recited in narrower claims.

29. Foods such as fruits, vegetables, nuts, seeds, and animal products are extremely variable in nutrient content, such that amount of omega-6, antioxidants, and phytochemicals in any given food or mixture thereof are not always the same, predictable, or controlled to be considered a "dosage", as evidenced by Knowles, "Variability in oleic and linoleic acid contents of safflower oil" Economic Botany, January–March 1965, Volume 19, Issue 1, pp 53.

30. Prior art has created excesses/imbalances of certain foods and nutrients in the nutrition supply and individual consumption as evidenced by Nutrition and You: Trends 2008; Survey by

American Dietetic Association, with major public health consequences (Specification ¶3-8 and rest of the disclosure).

31. There are very significant gaps in public knowledge of basic fats and nutrients. For example, less than 1% of Americans can correctly name fats, as evidenced by 2011 Food & Health Survey, by International Food Information Council Foundation.

32. According to the US Centers for Disease Control and Prevention "six in ten adults in the US have a chronic disease and four in ten adults have two or more…Chronic diseases such as heart disease, cancer, and diabetes are the leading causes of death and disability in the United States. They are also leading drivers of the nation's $3.5 trillion in annual health care costs…Many chronic diseases are caused by a short list of risk behaviors [including] poor nutrition."

### C. THE PTO'S EXAMINATION

33. Prosecution of the '847 application before the PTO examiner ended with a final rejection mailed on August 13, 2018.

34. In that final office action, claim 112 was withdrawn from examination under the allegation of lack of unity, which is a violation of the PCT rules and the federal treaty. This matter had been petitioned for administrative review repeatedly at the PTO previously, however, unity is continually evaluated throughout examination. The objection was repeated without providing any reasoning despite amendments to claim 112.

35. In that final office action, claim 96 was improperly objected for depending on a higher numbered claim 97, that should have been addressed by renumbering of claims post-allowance (PTO Manual of Patent Examining Procedure 608.01(j)).

36. In that final office action, claims 82 and 99 were rejected under 35 USC §112(a) 1st paragraph for allegedly violating the written description requirement.

37. In that final office action, claims 82, 87, 91- 93, 96, 97, 99, 100-102, 105, 109, 110, 113-114, and claims 115-120 were rejected for allegedly being indefinite under 35 USC §112(b) 2nd paragraph. The Examiner alleged that the features in independent claim 82, "wherein the one or more formulations are so packaged and labeled indicating suitability for consumption that collectively provide a dosage from 1 to 40g of omega-6 fatty acids and from 25mg to 10g of antioxidants, and wherein the antioxidants comprise one or more polyphenols in the dosage of greater than 5mg" are indefinite. Claim 99 was similarly objected to. The Examiner had ignored the evidence submitted that such dosages are routinely disclosed on packaging (e.g., on cough syrups), the Examiner had also ignored testimony from scientists that the claimed dosages are clear.

38. In that final office action, in claim 89 the Examiner recognized that Claim 82 recites "comprising" opening the claim to additional ingredients, yet the Examiner objected to lack of antecedent for lipids or omega-9 fatty acids.

39. In that final office action, the Examiner stated regarding claim 113 "the rejection remains for reasons of record..." even though claim 113 was never objected to in previous office action.

40. In that final office action, claims 88-89, 95, 103, 107-110 were rejected under 35 USC §112(d) 4th paragraph for allegedly failing to further limit the subject matter of the claims upon which each claim depends or for failing to include all the limitations of the claim upon which each claim depends.

41. In that final action, claims 83-86, 94, 98, 104, 107-108 were objected to allegedly as being dependent upon a rejected base claim.

42. In that final office action, claims 82-89, 91-104, 107-110 and 113-120 were rejected under 35 USC § 103 for allegedly being obvious over *Morris*, US 2008/0213239 in view of *Anthony* et al., US 2007/0166411, despite the teachings opposite to present claims within *Morris* and *Anthony*.

43. In that final office action, the examiner refused to enter two affidavits from skilled persons testifying that the claims are clear and definite from a skilled person's perspective and to the poorly understood dosages requirements of omega-6 fatty acids and antioxidants including polyphenols. The Examiner alleged that the affidavits are not in proper form. The Examiner also failed to give weight to oral testimony from a skilled person in an interview held two week earlier testifying to the foregoing.

44. In that final office action, the Examiner suggested two allowable claims, which could not accommodate multi-dose container (e.g., for a multi-day supply) and all the ingredients would have to be mixed in the same container potentially leading to hazardous interactions, greatly compromising the innovations and public health.

45. On October 15, 2018, without conceding to the merits of the rejections, solely to appease the Examiner and in the hope of advancing the prosecution further and to reduce the issues upon appeal, Applicant filed an After-Final Response amending only the form of the claims to overcome §112 rejections and renewing non-obviousness arguments, presenting the Examiner alternatives in a conciliatory tone.

46. On October 18, 2018, the Examiner declined to enter and consider the claims that had been amended in form only.

47. On October 24, 2018, a Petition for withdrawal of restriction of claim 112 was filed since unity is reviewed continually in prosecution and Examiner had failed to do so, and on October

12

25, 2018, a Petition for withdrawal of finality of the Office action of August 13, 2018, was filed since Examiner had failed to consider declarations of Dr. Undurti Das and Dr. Kent Erickson submitted on June 15, 2018, containing evidence of criticality, unexpected results, long-felt but unsolved needs, failure of others, etc., for determining the issue of obviousness of claims for patentability under 35 U.S.C. 103. On February 14, 2019, both the Petitions filed on October 24th and 25th were dismissed by the Director of Technology Center.

48. On November 13, 2018, a Notice of Appeal and a Pre-Appeal Brief was filed for review, reasoning that the October 15, 2018 amendments to form of the claims were filed to reduce issues on appeal, which should have been entered, and reiterating non-obviousness arguments.

49. On January 10, 2019, the Pre-Appeal Brief Review Panel instructed the Applicant via a mere checked box on a form to proceed to Appeal.

50. On February 11, 2019, timely Appeal Brief to PTAB was filed. Grounds of Appeal asserted reversal of each of the following rejections:

    A. claims 82 and 99 under 35 USC §112(a) 1st paragraph for allegedly violating written description requirement;

    B. claims 82, 87, 91- 93, 96, 97, 99, 100-102, 109, 110, and 113-120 for allegedly being indefinite under 35 USC §112(b) 2nd paragraph, asserting that Appellant does not concede to the merits of the rejection;

    C. claims 88-89, 95, 103, 107-110 for alleged improper dependency under 35 USC §112(d) 4th paragraph, asserting that Appellant does not concede to the merits of the rejection; and

    D. claims 82-89, 91-104, 107-110 and 113-120 under 35 USC § 103 for allegedly being obvious over *Morris*, US 2008/0213239 in view of *Anthony* et al., US 2007/0166411

asserting that each of the independent and the dependent claims is separately patentable. Six scientific publications from the record were resubmitted as evidence of poorly understood factors in the art and therefore non-obviousness.

51. On May 1, 2019, Examiner's Answer to the Appeal Brief was filed maintaining all rejections. With respect to rejections B and C, Examiner alleged that Appellant had not provided any arguments as to why they should be withdrawn, therefore the rejections should be sustained.

52. On July 1, 2019, Appellant filed a Reply Brief maintaining and reiterating the positions and arguments set forth in the Appeal Brief filed on February 11, 2019 and the responses filed on January 11, 2018 and June 15, 2018 and asserting that determination of patentability as per law is based on the entire record, and that arguments rebutting rejections B and C as improper are already on record.

53. On February 20, 2020, PTAB mailed a Decision reversing rejection A, but maintaining rejections B, C, and D, refusing to consider the arguments of record specifically called to attention in the Reply Brief. The PTAB decision is highly improper entailing violations of procedure, numerous clear errors, and abuse of discretion, and misconduct on part of the PTAB panel. The PTAB panel had disregarded 99% of the arguments within the Appeal Brief, let alone in and with the Reply Brief, and 100% of the evidence of non-obviousness (including the six scientific publications) submitted to the panel. Further the panel's ruling is in violation of the US Supreme Court precedent and PTAB's own precedential decisions.

54. On March 5, 2020 (corrected on March 10, 2020), Appellant filed a Petition invoking supervisory authority of the Chief Administrative Patent Judge (hereinafter "Chief Judge") requesting the Chief Judge to review the Board's actions.

55. On April 14, 2020, the Chief Judge issued a Petition Decision on petition dated March 10, 2020, dismissing the request for relief without proper response to arguments.

56. On April 28, 2020, a renewed (2nd) petition to the Chief Judge was filed calling to attention overlooked and misapprehended points from the previous petition with a request to alter/expand the panel composition for rehearing due to the exceptional nature of the case and abuse asserted in the Petition dated March 10, 2020, from PTAB panel, also in the interest of judicial economy.

57. On June 29, 2020, a Request for Rehearing was filed to PTAB calling to attention the procedural violations in affirming Rejections B, C, and D, and that several points of law and fact were misapprehended and overlooked by the panel in the Decision, such that almost all of the arguments and 100% of the evidence submitted with respect to Rejection D were overlooked, and that there has been an abuse of discretion since the Decision is based on an erroneous interpretation of law and clear errors, and the decision represents an unreasonable judgment in weighing relevant facts and factors.

58. On August 17, 2020 the Chief Judge issued a Petition Decision on renewed (2nd) petition dated April 28, 2020, dismissing the request for relief again without proper response to arguments, and surprisingly making false statements in the Decision.

59. On August 31, 2020, another renewed (3rd) petition to the Chief Judge was filed calling to attention overlooked and misapprehended points from the previous petition dated April 28, 2020.

60. On October 7, 2020, the PTAB panel issued a decision on the Request for Rehearing again disregarding 99% of the arguments and 100% of the evidence, maintaining rejections B, C, and D. The Panel even declined to address rejections B & C alleging that the Chief Judge had addressed them, which was incorrect because the petition dated August 31, 2020 was still

pending before the Chief Judge. The Panel also declined to address all of the evidence with respect to rejection D alleging that they may choose to rely upon evidence as convenient, which is not true because obviousness is determined based on prior art as a whole as per US supreme Court precedent.

61. On December 7, 2020, the Chief Judge issued a Petition Decision on renewed (3rd) petition dated August 31, 2020, dismissing the request for relief and for the third time without proper response to arguments.

## COUNT

62. Paragraphs 1-61 are incorporated herein by reference, as if fully set forth herein.

63. Applicant filed the '847 application, entitled "Optimized Nutritional Formulations, Methods for Selection of Tailored Diets Therefrom, And Methods of Use Thereof" on April 4, 2013. The '847 application claims priority back to October 14, 2010. As amended, the '847 application includes the following claims: 82-89, 91-104, 107-110, and 112-120 ("the pending '847 claims"). The pending '847 claims relate generally to formulations, methods of their tailoring including a computer system for the purpose, and methods of prophylaxis and/or treatment of a medical condition or disease in an individual providing a dosage from 1 to 40g of omega-6 fatty acids and from 25mg to 10g of antioxidants, and wherein the antioxidants comprise one or more polyphenols in the dosage of greater than 5mg. The pending '847 claims are patentable and satisfy all applicable statutory and regulatory requirements.

64. The PTO's restriction of claim 112 from continual examination is an error and a violation of federal treaty, the Patent Cooperation Treaty.

65. The PTO's applying numerous frivolous "objections" forcing the Applicant to file numerous petitions for administrative review wasting Applicant's time and resources while

16

depriving public of important solutions is obliteration of justice and is making the patent system harmful to public rather than helpful.

66. The PTO's forcing the Applicant to accept severely restricted claims that could compromise public health and create waste problems for the society is counter to the charge of the PTO to support innovation for betterment of the society.

67. The PTOs refusal to consider affidavits of Drs. Erickson and Das, and oral testimony of Dr. Das is an error.

68. The PTAB's affirmance of the examiner's rejections against the '847 claims is in error, contrary to law, arbitrary and capricious, and an abuse of discretion.

69. The PTAB's declination to review the Appeal on entirety of record, in particular the arguments and evidence of record even if called to attention in Reply Brief, is a procedural violation, depriving the Applicant of full and fair opportunity to be heard contrary to the law.

70. The PTAB's failure to review almost entirety of arguments and evidence specifically called to attention in the Appeal Brief is a grave violation of justice.

71. The examiner's rejections upheld by the PTAB fail to even make out a prima facie case of obviousness, fail to give proper weight to the objective indicia of non-obviousness, are unsupported, and legally erroneous.

72. The rejections also fail to properly consider what a person of ordinary skill in the art would have known and understood. Properly assessed, the '847 claims would not have been obvious at the time of invention, as confirmed by strong objective indicia of non-obviousness. The PTAB erred in affirming such grounds of rejection. Ms. Bhagat is dissatisfied with the PTAB's erroneous decision and elects to file this civil action under 35 U.S.C. § 145.

73. Ms. Bhagat is entitled to prompt issuance of a patent for claims 82-89, 91-104, 107-110, and 112-120. Ms. Bhagat expressly reserves the right to pursue issuance of the subject matter of any claims not adjudicated here through a continuation application or other appropriate procedure.

74. Ms. Bhagat is entitled for damages from the PTO for deliberately compromising her business and life for last eight years. PTO has made every possible excuse to harass and delay Ms. Bhagat's patents, just because she disclosed exceptionally important innovations. Although any relief will not be enough, but Ms. Bhagat leaves it to the Court and the Jury to determine appropriate monetary relief.

## PRAYER FOR RELIEF

Wherefore, Ms. Bhagat respectfully requests that this Court enter judgment against the Director of the PTO as follows:

(a) setting aside and reversing the PTAB's conclusion, and any actions and findings underlying the conclusion, that claims 82-89, 91-104, 107-110, and 112-120 of Ms. Bhagat's U.S. Patent Application No. 13/877,847 are unpatentable;

(b) declaring that Ms. Bhagat is entitled to issuance of a patent for the invention claimed in claims 82-89, 91-104, 107-110, and 112-120 of U.S. Patent Application No. 13/877,847;

(c) authorizing the Director of the PTO to issue such patent in compliance with the requirement of the law, including 35 U.S.C. § 145;

(d) a finding that the PTO took Ms. Bhagat's property with respect to the time wasted and livelihood lost over last eight years without providing just compensation, in violation of the Fifth Amendment;

(e) an award of just compensation for this taking of Ms. Bhagat's property; and

(f) all other relief to which the Plaintiff may show herself to be entitled and any other and further relief the Court deems necessary, just, or proper.

## JURY TRIAL DEMAND

Plaintiff Bhagat respectfully demands a trial by jury of all issues triable by a jury in his Complaint. The landmark nature of the case due to significant ramifications from the disclosed innovations on public health, and harm rather than help being caused to public health by piecemeal patents and obstruction of innovation in nutrition and prevention by the PTO makes a compelling case for jury trial in this case.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case

I also declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of this document.

Date: December 8, 2020

Respectfully submitted,
/s/ Urvashi Bhagat
**Urvashi Bhagat**
 Pro Se Plaintiff
P.O. Box 1000
Palo Alto, CA 94302
(650) 785-2516
bhagatu@asha-nutrition.com

20