NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

—————————————

**URVASHI BHAGAT,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES PATENT AND TRADEMARK
OFFICE, KATHERINE K. VIDAL, IN HER
OFFICIAL CAPACITY AS UNDER SECRETARY OF
COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE, UNITED
STATES,**
*Defendants-Appellees*

—————————————

2023-1545

—————————————

Appeal from the United States District Court for the
Eastern District of Virginia in No. 1:20-cv-01515-CMH-
IDD, Senior Judge Claude M. Hilton.

—————————————

Decided: April 3, 2024

—————————————

URVASHI BHAGAT, Palo Alto, CA, pro se.

MAUREEN DONOVAN QUELER, Office of the Solicitor,
United States Patent and Trademark Office, Alexandria,

VA, for defendants-appellees. Also represented by OMAR FAROOQ AMIN, MARY L. KELLY, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED; JESSICA D. ABER, MATTHEW JAMES MEZGER, Office of the United States Attorney for the Eastern District of Virginia, United States Department of Justice, Alexandria, VA.

————————————

Before PROST, CLEVENGER, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Urvashi Bhagat ("Bhagat") appeals several orders from the United States District Court for the Eastern District of Virginia: requiring Bhagat to file paper motions to the court, rejecting her requests for discovery enlargement and rescheduling of the pretrial conference, denying her request to file a second amended complaint, denying her request to exclude an expert, granting defendant United States Patent and Trademark Office's ("PTO") partial motion to dismiss Bhagat's causes of action unrelated to patentability, denying her request to strike the PTO's motion for summary judgment and granting that motion finding that Bhagat's patent claims are ineligible under 35 U.S.C. §§ 101 and 103. Bhagat also asserts various due process violations against the district court. We *affirm*.

BACKGROUND

A. The Patent Application

Bhagat is the inventor of the United States Patent Application No. 13/877,847 (the "Application"). The Application claims are directed to nutritional formulations containing omega-6 fatty acids and antioxidants, which the Application describes as contained "in any orally acceptable form, including, capsules, tablets, liquid formulations, or whole foods" and administered orally. The Application claims a "packaged product" where "the intermixture of

omega-6 fatty acid(s) and antioxidant(s) is not any single specific variety of a vegetable, a fruit, a nut, or a seed," and the dosage ranges "from 1 to 40g of omega-6 fatty acids and from 25mg to 10g of antioxidants . . . wherein the antioxidants comprise one or more polyphenols in the dosage of greater than 5mg." App. Br. to PTO at 46, claim 82. The Application also claims the product in a "kit" that includes a range of two to twenty different nutritional formulations, "which collectively provide an amount of nutrients from 0.0001 to 100 g/kg body weight . . . 40-80% of individual's daily calories . . . 10-50% calories from protein, 15-50% calories from lipids, and 35-85% calories from carbohydrates; and/or . . . deliver at least 50% of daily micronutrients for the individual" and/or is made up of "at least one of: vegetable or vegetable juice packs, fruit or fruit juice packs, dry grain packs, cereal packs, legume, grain, nuts, or seed packs, meat or seafood packs, or herbs, lipids, meals, snack, side dish, salad, desserts, milks, powder, puree, or yogurt packs." App. Br. to PTO at 23–4, claim 95.

The Application also contains method claims, wherein claim 88 sets out steps for "administering the dosage to an individual, wherein the individual belongs to a diet cohort" based on factors like "gender, age, genetic profile, family history, climactic temperature, or medical condition," claim 97 describes a method for treating "a medical condition or disease in the individual" and claim 116 recites a method for treating a variety of conditions such as aging, mental disorders, diabetes, autoimmune and infectious diseases. App. Br. to PTO at 21, 24, 31–32, claims 88, 97, and 116. None of the method claims, however, "include tailoring the nutrient dosages in the product to the diet cohort or restricting the total daily intake of any of the claimed nutrients." J.A. 21.

The Application additionally includes a withdrawn claim directed to a computer system to implement the method claims and to output nutritional plans for individuals based on dietary preferences and guidelines "wherein

the nutrition program comprises a listing of formulations, optionally comprising food items, wherein from 1 to 40g of omega-6 fatty acids and from 5mg to 10g of antioxidants comprising at least 5mg of one or more polyphenols are included in the program for daily consumption by the individual." App. Br. to PTO at 29–30, claim 112.

### B. Procedural History

#### 1. PTO Proceedings

Bhagat filed the Application with the PTO in 2013. The PTO examiner rejected all pending claims of the Application for obviousness and rejected claims 82 and 99 for failing to comply with the written description requirement, claims 82, 87, 91–93, 96, 97, 99, 102, 109, 110, and 113–120 for indefiniteness, and claims 88, 89, 95, 103, and 107–110 for improper dependency.

Bhagat appealed to the Patent Trial and Appeal Board ("Board"), which reversed the rejection for written description and affirmed the rejection for obviousness on the merits.[1] The Board affirmed the obviousness rejection because the Application claims were "obvious in light of numerous past expert studies and disclosures," particularly Claudia R. Morris's U.S. Published Patent Application Number 2008/0213239 ("Morris"). *Bhagat v. U.S. Pat. & Trademark Off.*, No. 1:20-cv-1515, 2023 WL 2721003, at *2 (E.D. Va. Mar. 30, 2023) ("Summary Judgment Opinion").

The Board explained that Morris addresses the treatment of various conditions, like cardiovascular disease, by disclosing nutritional formulations comprising omega-6

---

[1] The Board summarily affirmed the rejections based on indefiniteness and improper dependency because Bhagat failed to include in her Appeal Brief any substantive arguments on the merits that the rejections on those grounds should be reversed. J.A. 5980, 6480.

fatty acids and Vitamin E in dosages and amounts that
overlap with those in the Application claims. *Id.* at *2
("Morris shows that the formulations comprise from about
50 mg to about 500 mg omega-6 fatty acids that may be
administered once, twice, or three times daily, which would
equal a dosage ranging from 50 mg to 1,500 mg of omega-6
fatty acids a day."). The Board also found that Morris dis-
closed packaged formulations of omega-6 fatty acids, Vita-
min E, and polyphenols, as well as dosages of omega-6 and
Vitamin E in the ranges claimed in the Application claims
and disclosed that "dosages are a result-effective variable
and may be optimized for an individual," rendering the Ap-
plication's claimed dosages obvious. *Id.* Factors discussed
in Morris as impacting the preparation of formulations in-
clude age, weight, and genetic makeup, which overlap with
the diet cohort factors in the Application. *Id.* at *2. The
Board found that Morris disclosed most of what the
claimed invention covered, and that the only difference—
that the Application disclosed using nutrients from differ-
ent sources—was rendered obvious from other expert dis-
closures teaching the mixtures of different nutrient
sources. *Id.* at *2 ("The only difference the Board found
between Morris and [the Application's] claimed formula-
tion was an explicit disclosure of using nutrients from dif-
ferent sources . . . . [which] would have been obvious in
light of another expert's teachings of oil blends from differ-
ent sources.").

### 2. District Court Proceedings

On December 10, 2020, Bhagat filed suit in the United
States District Court for the Eastern District of Virginia to
challenge the Board's decision, alleging that the district
court had jurisdiction pursuant to 35 U.S.C. § 145 and
28 U.S.C. §§ 1331, 1338(a), and 1361. *Id.* at *2. Bhagat
amended her complaint on April 19, 2021. Am. Compl.,
*Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 13. In addi-
tion to alleging that the PTO erroneously rejected her pa-
tent claims, Bhagat asserted entitlement to general

6                                          BHAGAT v. PTO

damages due to the PTO's "bad faith," and asserted causes
of action for "taking of her property, including but not lim-
ited to her patent," tortious harassment, and a mandamus
compelling the PTO to issue the Application's rejected pa-
tent claims. Am. Compl. at ¶¶ 64–84, *Bhagat v. USPTO*,
(No. 1:20-cv-01515), ECF 13; *Bhagat v. U.S. Pat. & Trade-
mark Off.*, No. 1:20-cv-1515, 2021 WL 3130866, at *2 (E.D.
Va. July 22, 2021) ("Motion to Dismiss Opinion").

On July 22, 2021, the district court granted the PTO's
motion to dismiss all of Bhagat's causes of action that were
not related to the patentability of the Application claims
and to strike Bhagat's request for a jury trial. *Motion to
Dismiss Opinion*, 2021 WL 3130866, at *3.

The district court first determined that it did not have
subject matter jurisdiction over the claims for takings,
money damages, or tortious harassment due to sovereign
immunity. *Id.* at *1. As the district court noted, agencies
of the United States, such as the PTO, are generally
shielded from liability by sovereign immunity unless Con-
gress has expressly waived it. *Id.*

The district court explained that "Congress has not
waived its sovereign immunity for money damages in ac-
tions brought pursuant to 35 U.S.C. § 145" and therefore
found it did not have jurisdiction over any of Bhagat's
claims for money damages under Section 145. *Id.*

The district court then stated that the Tucker Act
waives sovereign immunity for claims for non-tort money
damages, such as takings claims, but gives exclusive juris-
diction to the Court of Federal Claims when those damages
are over $10,000, and that the Federal Tort Claims Act
waives sovereign immunity for tortious harassment only if
a plaintiff first presents an administrative claim to the
agency that the plaintiff purports is responsible for their
injury. *Id.* at *1–2. Since Bhagat brought claims for
$500,000,000 against the United States, the district court
concluded that the Court of Federal Claims had exclusive

jurisdiction over the damages claim under the Tucker Act. *Id.* at *1. The district court also found that since Bhagat did not present an administrative claim to the PTO, the agency allegedly responsible for harassing her, the district court did not have jurisdiction over her tortious harassment claim. *Id.* at *2.

Next, the district court addressed the PTO's motion to dismiss for failure to state a claim on which relief could be granted, finding that there were no facts in the Amended Complaint to support Bhagat's allegations that the PTO violated her constitutional rights, made false statements, or that she was entitled to mandamus relief. *Id.* The district court found that Bhagat failed to establish, as required for mandamus relief, that "(1) she has a clear right to the relief requested and (2) no other relief is available" because she failed to plausibly allege that the PTO owes her a duty to issue her patent and because she had another avenue of relief under Section 145, which she also asserted in her Amended Complaint. *Id.* (citing *Heckler v. Ringer*, 466 U.S. 603, 616 (1984)). The district court also concluded that Bhagat alleged only that the PTO erred in adjudicating her patent without alleging any facts to support her claim that the PTO made false statements and acted with misconduct, and therefore concluded that she made only "naked assertions" that could not survive the PTO's motion to dismiss. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Similarly, the district court found that Bhagat's allegation that the PTO violated her constitutional rights was not a plausible claim because she identified neither the violative action the PTO allegedly took nor the constitutional right it purportedly violated. *Id.* at *3.

Finally, the district court granted the PTO's motion to strike Bhagat's request for a jury trial because the Seventh Amendment right to a jury trial is not applicable in actions against the United States, unless Congress in waiving sovereign immunity unequivocally expresses that the right exists in the authorizing statute. *Id.* The district court held

BHAGAT v. PTO

that the remaining patent claim, for which Congress waived sovereign immunity under Section 145, did not provide Bhagat with a right to a jury trial because Section 145 contains no unequivocal right to a jury trial. *Id.*

Thus, the district court dismissed all causes of action besides the patent claim under Section 145 and struck Bhagat's request for a jury trial. *Id.*

On December 14, 2022, Bhagat filed a motion for the extension of time for expert rebuttal reports and the enlargement of discovery, arguing that the PTO's "long-winded and disjointed" expert reports required more time to prepare the rebuttals, that illness and unavailability of her experts caused a delay, and that she contacted the judge's law clerk by phone and email to request a conference to extend time for expert rebuttals and enlarge discovery before the close of discovery.[2] Mot. for Extension of Time for Expert Rebuttal Report & Further Enlargement of Discovery, *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 62, 64. Bhagat requested an extension of time for disclosing rebuttals to the PTO's experts to December 9, 2022, the date that she did submit the rebuttals, which was thirteen days after the initial deadline of November 25, 2022. ECF 64, at 11. She also requested that discovery be enlarged to February 6, 2023, to allow her further discovery requests and to permit her to depose the PTO's expert witness, and for the final pretrial conference to be delayed from January 12, 2023, to February 12, 2023. ECF 64, at 11.

Also on December 14, 2022, Bhagat filed a motion to disqualify the PTO's expert, Dr. William S. Harris, as an

---

[2]  Per her own admission, Bhagat contacted the clerk multiple times from November 20, 2022, through December 5, 2022. ECF 64, at 6. The district court subsequently issued orders explaining that this was not the proper mode for requesting relief from the court, discussed *infra* at 8–9.

expert witness due to "numerous conflicts of interest, and his opinions and testimony [being] neither relevant nor reliable pursuant to the standards set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 506 U.S. 579 (1993)." Mot. to Disqualify Dr. Harris at 1, *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 66.

On December 16, 2022, the district court issued an order addressing Bhagat "constantly emailing and calling the [c]ourt requesting various forms of relief despite being informed by the [c]ourt, on more than one occasion, that written motions are the only appropriate form by which to request relief from the [c]ourt." *Bhagat v. U.S. Pat. & Trademark Off.*, No. 1:20-cv-01515, 2022 WL 18401639, at *1 (E.D. Va. Dec. 16, 2022), ECF 68 ("First Ex Parte Communications Order"). The district court noted that, while it had granted Bhagat's motion for Pro Se E-Noticing, that grant did not permit her to "file documents or requests for relief electronically" and that she must follow the proper procedure for requesting relief, which is "filing a paper copy of any motion through the Clerk's Office that includes the relief requested and a legal basis for granting such relief." *Id.* The district court directed Bhagat to review the United States District Court for the Eastern District of Virginia Pro Se Reference Handbook and asserted that it would not respond to any further email or phone communications from Bhagat. *Id.*

In response, Bhagat filed a motion, which the district court "interpret[ed] . . . as a Motion to Vacate the December 16, 2022 Order." *Bhagat v. U.S. Pat. & Trademark Off.*, No. 1:20-cv-01515, 2022 WL 18401638, at *1 (E.D. Va. Dec. 30, 2022), ECF 75 ("Second Ex Parte Communications Order"). The district court denied this motion on December 30, 2022, reiterating that Bhagat "should never contact chambers regarding any substantive issues concerning the case unless authorized by the [c]ourt in advance" and concluding that Bhagat's substantive request for extension of time for expert rebuttal reports, which was the topic of her

ex parte communication, was not an exception to this rule just because the district court had the "ability to sua sponte grant an extension of time 'with or without motion or notice' as noted" in Federal Rule of Civil Procedure 6(b)(1)(A). *Id.*

On January 10, 2023, the district court denied Bhagat's motion to enlarge discovery to February 6, 2023, and to reschedule the pretrial conference, but granted the motion in part to permit the extension of the rebuttal disclosures to December 9, 2022. Order on Mot. for Extension of Discovery, *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 77. The district court reasoned that Bhagat's motion, which she filed after the close of discovery, was not timely, and that regardless she failed to show good cause for an extension because her delays were caused by her own legal strategy[3] and inability to manage her personal workload. *Id.* The district court found that, since Bhagat did not begin discovery until November 1, 2022, despite discovery opening on August 11, 2022, she did not show good cause for her extension request. *Id.* The district court was also unpersuaded by Bhagat's arguments that the PTO has more resources than she does, as it noted there is often a disparity in resources among parties. *Id.* Thus, it rejected her

---

[3]     Bhagat filed a petition to the United States Supreme Court requesting that the Supreme Court issue a writ of mandamus to the United States District Court for the Eastern District of Virginia on August 17, 2022. *In re Urvashi Bhagat*, 2022 WL 4226537 (August 17, 2022). Her Petition was denied on October 31, 2022. *In re Bhagat*, 143 S. Ct. 396 (2022). The district court determined that Bhagat's decision to wait to begin discovery until after the outcome of her petition to the Supreme Court was a legal strategy that did not entitle her to an extension for discovery. Order on Mot. for Extension of Discovery, *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 77.

request to extend discovery or to reschedule the pretrial conference. *Id.*

On January 17, 2023, the district court denied Bhagat's motion to disqualify Dr. Harris, reasoning that her "objections go to the weight of the expert's testimony, not admissibility." Order Declining to Disqualify Dr. Harris, *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 83.

The PTO filed a motion for summary judgment on January 20, 2023, arguing that the undisputed facts show that the Application claims are patent ineligible under 35 U.S.C. § 101 and that claims 82–89, 91–104, 107–110, and 113–120 are unpatentable as obvious under 35 U.S.C. § 103. On January 31, 2023, Bhagat responded with a motion to strike the PTO's summary judgment motion as premature since she had appealed the close of discovery, denial of the rescheduling of the pretrial conference, and admissibility of the PTO's expert report.

The district court denied Bhagat's motion to strike the PTO's motion for summary judgment and granted the PTO's motion, finding that the claims at issue are patent-ineligible under Section 101 and unpatentable under 103. *Summary Judgment Opinion*, 2023 WL 2721003, at *1–5.

The district court first addressed the motion to strike, finding that since Bhagat had over four months to conduct discovery, her argument that the motion for summary judgment was premature due to her appeal of the district court's refusal to extend discovery was not persuasive. *Id.* at *1. The district court also found that Bhagat failed to demonstrate that a stay was supported pending interlocutory appeal of discovery matters. *Id.*

After concluding that Bhagat's motion to strike the PTO's motion should be denied, the district court turned to the merits of the PTO's summary judgment motion.

The district court first addressed the PTO's argument that all the Application claims are patent ineligible under

Section 101, finding that both the product and method claims were directed to patent-ineligible subject matter and were not transformed to patent-eligible subject matter because the only limitations beyond those directed at natural phenomena or abstract ideas were well-known and conventional. *Id.* at \*3–4 (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)); *see also* PTO Mem. in Supp. of Summ. Judgment at 16–24, *Bhagat v. USPTO* (No. 1:20-cv-01515), ECF 86.

In its *Alice* step one analysis, i.e., determining whether the claims are directed to a patent-ineligible concept such as a natural phenomenon or abstract idea, the district court found that the Application claims recited a combination of nutrients naturally present in almonds, with some of the claims describing the same dosages of omega-6 fatty acids, polyphenols, and phytosterols contained in almonds. *Summary Judgment Opinion*, 2023 WL 2721003, at \*3 ("[A]lmonds contain the dosages of omega-6 fatty acids recited in claims 92, 107, 113, and 119, and the polyphenol dosage recited in claim 120. Almonds further comprise phytosterols as required by claim 85, in the dosages recited in claims 86, 93, 108, and 114."); *see also id.* ("Claim 94's requirement that one formulation provide omega-6 fatty acids in a dosage less than 1 g, but that a plurality collectively provide 1 to 40 g of omega-6 merely encompasses a product of 100 g of almonds broken into 5 g increments. Almonds also contain the phytochemicals, lipids, antioxidants, vitamins, minerals, and fiber recited in claims 87 and 101 [and] claim 89 encompasses a mixture of one or more food items, which includes a mixture of 100 g of almonds with other nuts."). The district court also found that claim 112, which "deals with a computer system that implements the method of preparing the product" was directed to the abstract idea of meal planning. *Id.* at \*4.

In its *Alice* step two analysis, i.e., determining if any additional claim limitations transform a natural phenomenon or abstract idea into a patent-eligible invention, the

district court concluded that all the remaining limitations recited well-known activities such as conventional packaging practices, crushing almonds into a powder, and "administering," "determining," "selecting," and "preparing" steps. *Id.* The district court found that the "administering" step included eating or feeding almonds to an individual and that the "diet cohorts" were identified in "a generic manner that all humans would qualify." *Id.* Similarly, the district court found that the "determining" step groups individuals into the broad diet cohorts "based on food preference, dietary habits, age, or gender" and that the "selecting" and "preparing" steps link the nutritional formulations to the diet cohorts. *Id.* The district court also concluded that claim 112 does nothing more than add conventional computer components to the abstract idea of meal planning. *Id.* Thus, the district court concluded the Application's claims were patent ineligible under Section 101.

The district court then found that the pending Application claims were further unpatentable as obvious under Section 103 considering the teachings of Morris, which the Board relied on in rejecting the claims, and Joshua C. Anthony et al., U.S. Published Patent Application Number 2007/0166411 A1 ("Anthony"). *Id.* at *5. The district court noted that the Board determined that Morris taught "preparing and administering a packaged dietary formulation comprising omega-6 fatty acids, Vitamin E, and polyphenols" as well as "dosages of omega-6 fatty acids and Vitamin E overlapping the claimed range." *Id.* The district court also noted that the PTO's expert witness Dr. Harris explained that "the benefits of consuming the claimed nutrients were well-known in the art as of 2010" and that Bhagat had not argued how the references Dr. Harris used to support this statement did not disclose the limitations in the dependent claims. *Id.* The district court found that Bhagat failed to establish unexpected results to rebut the presumption of obviousness from the overlapping dosage ranges in Morris and the Application and could not support

her contention that Morris teaches away from the Application claims. *Id.* Finally, the district court found that Bhagat's argument that the prior art was not relevant because it did not address the same problem solved by her Application claims was unconvincing because "the prior art [was] from the same field of endeavor in nutritional formulations." *Id.*

Therefore, the district court granted the PTO's motion for summary judgment that the Application claims were not eligible for patent protection. *Id.*

On March 15, 2023, Bhagat filed a motion for leave to file a second amended complaint, which the district court denied as unduly delayed on March 31, 2023. Mot. for Leave to File Second Am. Compl., *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 113; Order Denying Mot. to File Second Am. Compl., *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 126.

Bhagat appeals (1) the district court's orders requiring her to file paper motions to request relief from the court, denying her request for the enlargement of discovery, denying her challenge to the admissibility of Dr. Harris's testimony, and denying her leave to file a second amended complaint, and alleges that the failure of the judges to recuse themselves was a violation of due process; (2) the district court's dismissal of her damages, takings, and misconduct claims and striking of her demand for jury trial; and (3) the district court's denial of her motion to strike, and its subsequent grant of, the PTO's motion for summary judgment. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

This Court reviews district court orders on procedure, discovery, complaint amendments, judge recusal and the admissibility of evidence under the law of the regional circuit; here, the Fourth Circuit, which reviews these

decisions for an abuse of discretion. *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed. Cir. 1984); *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196 (4th Cir. 2022) ("District courts have inherent power to manage their dockets with an eye toward speedy and efficient resolutions . . . . So we review decisions about the nature of a dismissal . . . for an abuse of discretion."); *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) ("We afford substantial discretion to a district court in managing discovery and review discovery rulings only for abuse of that discretion."); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 940 (4th Cir. 1995) ("We review for abuse of discretion a district court's ruling on a motion for leave to amend and to add counterclaims."); *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003) ("We review a trial judge's decision on matters of recusal for abuse of discretion."); *United States v. Crisp*, 324 F.3d 261, 265 (4th Cir. 2003) ("We review for abuse of discretion a district court's decision to admit or reject expert testimony.").

This Court also reviews procedural decisions that are not unique to patent law, such as dismissal of a complaint for lack of jurisdiction or failure to state a claim and a grant of summary judgment, under the law of the regional circuit. *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002); *Weisner v. Google LLC*, 51 F.4th 1073, 1081 (Fed. Cir. 2022); *Syngenta Crop Prot., LLC v. Willowood, LLC*, 944 F.3d 1344, 1355 (Fed. Cir. 2019). The Federal Circuit reviews dismissals under both FRCP 12(b)(1) and 12(b)(6) de novo. *Madey*, 307 F.3d at 1358 (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)); *Burbach Broad. Co. of Del. V. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Similarly, the Fourth Circuit reviews the grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. *Syngenta*, 944 F.3d at 1355. The Fourth Circuit

reviews district court determinations of whether summary judgment was premature for an abuse of discretion. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).

### A.  Non-Patent Claims

The district court did not abuse its discretion or violate due process in issuing its orders declining to extend discovery, requiring Bhagat to file motions to request relief and to do so via paper motions rather than through electronic filing, admitting Dr. Harris's testimony, or declining to allow Bhagat another amendment to her complaint.  It was also not reversable error for Judge Claude M. Hilton and Magistrate Judge Ivan Davis to decline to recuse themselves. The district court did not err as a matter of law in dismissing Bhagat's claims for damages, takings, constitutional violations, and mandamus under FRCP 12(b)(1) and 12(b)(6).

### 1.  Procedural Issues

Bhagat fails to demonstrate that the district court abused its discretion or violated due process in its management of discovery and the trial procedure.

First, it was not an abuse of discretion to deny Bhagat's request to extend discovery, which she filed after the close of discovery.  Bhagat's argument that her ex parte emails and calls were an attempt to timely request the extension of discovery fails because the district court repeatedly notified Bhagat that the proper procedure for requesting relief from the court was through filing paper motions.  *See, e.g.*, First Ex Parte Communications Order, *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 68.  Thus, Bhagat's actions did not amount to "excusable neglect" that could justify her untimely extension motion.  *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219–20 (4th Cir. 2011) ("[A] district court should find excusable neglect only in the *extraordinary cases* where injustice would otherwise result."

(emphasis in original)).  Further, the district court did not abuse its discretion in finding that Bhagat failed to demonstrate good cause to extend discovery because she waited three months from the opening of discovery to send her discovery requests.  *Cook v. Howard*, 484 F. App'x 805, 815–16 (4th Cir. 2012) (concluding that the district court did not abuse its discretion by failing to find good cause where the party demonstrated a lack of diligence by waiting months between filing suit and seeking discovery).

Second, the district court did not abuse its discretion by requiring Bhagat to file written motions to request relief orders, nor did it violate due process with its rule that pro se parties must submit written motions rather than electronic filings.  The district court's local rule, E.D. Va. Local Civil Rule 7(F), requires that parties file written briefs with all motions to request relief from the court, and E.D. Va. Local Civil Rule 1(A) in conjunction with the E.D. Va. Electronic Case Filing Policies and Procedures Manual requires pro se parties to file using paper rather than through electronic filing.  E.D. Va. Local Civ. R. 7(F), 1(A); U.S. Dist. Ct. E.D. Va., Electronic Case Filing Policies and Procedures Manual, at 12, 23 (Revised Sept. 23, 2020), https://www.vaed.uscourts.gov/sites/vaed/files/ECF-Manual%2012-17-2021.pdf.  Bhagat argues that Rule 7(F) conflicts with FRCP 6(b)(1)(A); however, that rule merely permits the court to grant extensions without motion and therefore does not conflict with the local rule's requirement that applies in the absence of such a discretionary exception.  *See* Fed. R. Civ. P. 6(b)(1)(A); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 n.5 (1990) (explaining that a court may, using its *discretion*, grant a request for an extension of discovery even without motion or notice).  In fact, under another local rule, the district court has discretion to waive the requirement for a written motion in some circumstances, which further demonstrates that the local rules align with the discretionary nature of FRCP 6(b)(1)(A). E.D. Va. Local Civ. R. 26(B).

Similarly, it was not a due process violation for the district court to require Bhagat to comply with its rule that pro se parties may not use electronic filing, because she has not identified that she has a "right" to electronic filing, nor has she established that she suffered lack of notice or opportunity to be heard. *See In re Hunter*, 600 F. App'x 126, 127 (4th Cir. 2015) ("[Plaintiff] cite[d] neither statutory law nor judicial precedent demonstrating a clear right to file electronically."); *J.G. Peta, Inc. v. Club Protector, Inc.*, 65 Fed. App'x 724, 728 (Fed. Cir. 2003) (finding no constitutional right to submit motions in a particular format); *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond."). Bhagat alleges that the district court usurped approximately twelve days of her time by requiring paper filings, which led to her delay in completing discovery, impeded her ability to oppose summary judgment, and delayed her filing her motion to amend her complaint a second time. Appellant's Br. at 27. However, Bhagat's delays were primarily caused by her decision to wait three months to begin discovery and, similarly, she did not move for leave to file a second amended complaint until over a year and a half after her first amended complaint was partially dismissed and after filing notice of appeal to this Court. *See* Order Granting Defendant's Partial Mot. to Dismiss Plaintiff's First Am. Compl., *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 26 (07/22/2021); Mot. for Leave to File Second Am. Compl., *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 113 (03/15/2023); Notice of Appeal, *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 81 (01/13/2023). Thus, the district court did not violate due process by requiring Bhagat to file electronically where she has not shown any constitutional right to do so or by rejecting her argument that she had no notice or opportunity to be heard because of the district court's requirement.

Third, the district court did not abuse its discretion when it denied Bhagat's motion to exclude Dr. Harris's testimony because the district court correctly noted that Bhagat's complaints about Dr. Harris's testimony went to the weight, rather than admissibility, of that testimony. *See Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195–96 (4th Cir. 2017) (finding it was not an abuse of discretion for the district court to decline to exclude an expert's testimony under *Daubert* where the challenges to the testimony went to weight and credibility rather than admissibility). *Daubert* challenges should be to the reliability and relevance of the expert's principles and methodology rather than to the expert's conclusions. *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 595 (1993). Bhagat did not challenge Dr. Harris's principles or methodology; rather, she sought disqualification based on his "significant financial interest" in preventing the Application from being granted and his purported misinterpretation of the prior art and the law. Mem. in Supp. of Mot. to Disqualify Dr. Harris at 3, 7, *Bhagat v. USPTO*, (No. 1:20-cv-01515), ECF 66. Bhagat's argument of bias goes to Dr. Harris's credibility, and her argument that Dr. Harris mischaracterized the prior art and the law goes to the weight of his evidence; none of her challenges are to the evidence's admissibility and thus the district court did not abuse its discretion in denying her motion to exclude Dr. Harris's testimony.

Fourth, it was not an abuse of discretion for the district court to deny Bhagat's motion for leave to file a second amended complaint because she does not dispute that the motion was delayed and puts forth no evidence that her delay would not prejudice the PTO to permit her to amend her complaint after discovery had closed and judgment for the PTO entered. *See Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (finding the district court did not abuse its discretion in denying a motion to amend a complaint filed over two and a half years prior when significant discovery had occurred);

*see also Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) ("[T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . .").

Fifth and finally, it was not reversable error for Judge Hilton and Magistrate Judge Davis to decline to recuse themselves from the case. Bhagat did not request that either judge do so at any point before the district court; thus, she raises this issue for the first time on appeal. The only arguments that Bhagat puts forth to establish that the judges were biased are that their rulings were all "substantially against" Bhagat and that "the court silenced [Bhagat] in hearing . . . and pressed her to withdraw the action." Appellant's Br. at 66–67 (citing J.A. 9922–48; J.A. 9932). These arguments are insufficient to establish a substantial interest for either judge that would create a temptation that would lead the average judge to be biased. *Aetna Life Ins. Co. v. Lavoie*, 106 S. Ct. 1580, 1587 (1986); *see also Litkey v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").

Thus, none of the district court actions in managing discovery or trial procedure constituted an abuse of discretion or a violation of the due process clause.

### 2. Dismissal

The district court did not err in dismissing Bhagat's damages, takings, and tortuous harassment claims for lack of jurisdiction or in dismissing her causes of action for misconduct, violation of a constitutional right, and entitlement to mandamus relief for failure to state a claim on which relief can be granted.

Bhagat's claim for general damages and her claim for damages under the Takings Clause are claims against the United States for money, which fall under the Tucker Act. 28 U.S.C. § 1491. The Tucker Act waives sovereign immunity by granting jurisdiction to the Court of Federal Claims over claims against the United States "for liquidated or unliquidated damages in cases not sounding in tort." *Id.* District courts have concurrent jurisdiction over these claims only when the claims do not exceed $10,000; otherwise, the Court of Federal Claims has exclusive jurisdiction. *E. Enters. v. Apfel*, 524 U.S. 498, 520 (1998); *Suburban Mortg. Assoc., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1121 n.8 (Fed. Cir. 2007) (explaining that the Court of Federal Claim's exclusive jurisdiction for money damages over $10,000 comes from Congress not granting any other court jurisdiction over these claims and the "Little Tucker Act" that gives district courts concurrent jurisdiction over Tucker Act claims that do not exceed $10,000) (citing 28 U.S.C. § 1346(a)(2)).[4] It is undisputed

---

[4] Contrary to Bhagat's contentions, this jurisdictional scheme has not been overruled by the Supreme Court, and the cases that Bhagat cites for this proposition do not support her argument. Appellant's Br. at 20–21 (citing *Knick v. Township of Scott*, 139 S. Ct. 2162, 2179 (2019) (removing the "state-litigation requirement" for takings claims against local governments that required the takings claim to be brought in state court before federal court); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312–14 (2005) (finding federal question jurisdiction over a state law claim that involved contested issues of federal law); *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 71 n.15 (1978) (finding jurisdiction in a district court under Section 1331(a) where the party did not seek compensation for a takings claim, which the Court clarified would be properly brought in the Court of Claims, but instead requested a declaratory judgment).

that Bhagat seeks over $10,000 in damages; thus, the district court did not err in finding it lacked jurisdiction over her general damages claim and damages under the Takings Clause claim.

Similarly, there is no waiver of sovereign immunity for claims for money damages under 28 U.S.C. §§ 1331, 1338, or 35 U.S.C. § 145 because none of these statutes contain express and unequivocal waivers of sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976) (stating that waivers of sovereign immunity must be expressed unequivocally). Bhagat fails to point to an express waiver of sovereign immunity in any of the relevant statutes. Additionally, the PTO is not, as Bhagat contends, a "sue or be sued" agency that operates similarly to a private corporation, and there is no "sue or be sued" clause in the Patent Act. *See, e.g.*, 35 U.S.C. § 1.

The district court was also correct to dismiss Bhagat's allegations of misconduct, violations of constitutional rights, and entitlement to mandamus relief for failure to state a claim on which relief could be granted because none rise above conclusory allegations.

To support her argument that the district court erred in dismissing her claims for misconduct, constitutional violations, and entitlement to mandamus relief, Bhagat points to numerous portions of her Amended Complaint and essentially argues that she had a constitutional right to have her Application issue as a valid patent and that the PTO's refusal to do so was a result of its bad faith and misconduct. Appellant's Br. at 22 (citing Am. Compl. at ¶¶ 2–3, 11, 13, 36–37, 40–41, 45–46, 48–49, 55, and 56–63, Prayer for Relief (b), (c), (d), and (f)). The portions of the Amended Complaint that Bhagat points to merely critique the PTO for rejecting her claims and the PTAB for maintaining most of those rejections, and at no point does Bhagat identify specific false statements or actions of misconduct from the PTO or cite to any portion of the

Constitution to support the PTO's alleged violation of her constitutional rights.  Further, for mandamus relief, Bhagat failed to plead that she had a clear right to have her Application issued as a valid patent and that there was no alternative relief available—particularly because Bhagat included claims for relief under § 145 in her complaint, acknowledging that alternative relief existed.  Am. Compl. Prayer for Relief (c).  Thus, the district court did not err in finding that Bhagat failed to state a claim on these issues.

Finally, Congress did not clearly provide a right to a jury trial in 28 U.S.C. §§ 1331, 1338, or 35 U.S.C. § 145, and thus the district court correctly struck Bhagat's request for a jury trial.  *See Lehman v. Nakshian*, 453 U.S. 156, 160–63 (1981) ("[I]f Congress waives the Government's immunity from suit . . . the plaintiff has a right to a trial by jury only where that right is one of 'the terms of [the Government's] consent to be sued'. . . . The appropriate inquiry, therefore, is whether Congress clearly and unequivocally departed from its usual practice in this area, and granted a right to trial by jury.") (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Mitchell*, 445 U.S. 535, 538 (1980)).

### B. Summary Judgment on Patent Ineligibility

The district court did not err as a matter of law in denying Bhagat's motion to strike the PTO's motion for summary judgment or in granting the PTO's motion for summary judgment.

### 1. Denial of Bhagat's Motion to Strike

It was not an abuse of discretion for the district court to determine that the PTO's summary judgment motion was not premature.  *See Harrods*, 302 F.3d at 244 ("We review for abuse of discretion the district court's refusal to allow [a party] the opportunity to engage in discovery prior to the entry of summary judgment.").

The Fourth Circuit makes clear that "[i]f a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit" explaining that more time for discovery is needed for that party to oppose the motion for summary judgment. *Id.* While courts have, in some cases, found that summary judgment was premature without the opposing party filing a Rule 56(f) affidavit, in general, "the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (internal quotations removed)). Here, Bhagat does not dispute that she failed to file a Rule 56(f) affidavit. Further, this is not a case where "the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery," which can sometimes justify a finding that summary judgment was premature without a Rule 56(f) affidavit, because Bhagat has had ample time to complete discovery and, as previously discussed, chose to wait three months to begin pursuing discovery. *Id.* Thus, the district court did not abuse its discretion in denying to Bhagat's motion to strike the PTO's motion for summary judgment as premature.

### 2. Grant of Summary Judgment

Further, the district court correctly granted the PTO's unopposed motion for summary judgment, since there were no disputed issues of material fact to contradict the finding that the Application claims were patent ineligible under Section 101 and that the pending claims were unpatentable under Section 103. Bhagat did not file an opposition to the PTO's summary judgment motion and instead relies on her briefing in support of her motion to strike to argue that she raised issues of disputed fact. Appellant's Br. 49–50. However, Bhagat does not identify a single issue of disputed fact in her motion to strike briefing; instead, she merely included the conclusory statement that "the record is rife with other facts [besides Dr. Harris's testimony that

Bhagat moved to exclude] that are in serious dispute."
Mem. in Supp. of Mot. to Strike at 2, *Bhagat v. USPTO*
(No. 1:20-cv-01515), ECF 91. Thus, Bhagat has put forth
nothing to contradict the PTO's account of the undisputed
facts in its summary judgment motion. *See S.E.C. v. Far-
kas*, 557 F. App'x 204, 207 (4th Cir. 2014) (holding that the
court is allowed to treat the movant's facts as undisputed
when the nonmovant fails to dispute the movant's asser-
tions of fact).

The district court therefore did not err in granting the
PTO's motion for summary judgment that the Application
claims are patent ineligible under Section 101, or in the al-
ternative, that the pending claims are obvious under Sec-
tion 103.

The district court correctly found that the Application
claims were directed to a product of nature or abstract idea
under *Alice* step one and that no additional claim elements
transformed the ineligible subject matter into a patent-eli-
gible invention. *Alice*, 573 U.S. at 217; *Mayo Collaborative
Servs. v. Prometheus Lab'y, Inc.*, 566 U.S. 66, 71 (2012).
Bhagat put forth no evidence to contradict the PTO's asser-
tion that the claimed nutritional formulations were the
same combination of nutrients found naturally in almonds;
on appeal, her only contention is that the Application ex-
pressly disclaims almonds when it says, "wherein omega-6
fatty acid(s) and antioxidant(s) are not any single specific
variety of a vegetable, a fruit, a nut, or a seed." Appellant's
Br. at 54 (quoting Application claim 82). However, limiting
the form of the servings of the nutritional formulations to
require a mixture of fatty acids and antioxidants—rather
than "any specific variety of a vegetable, a fruit, a nut, or a
seed"—does not change the undisputed fact that the nutri-
tional compositions Bhagat seeks to claim exist in nature.
Bhagat also does not dispute that claim 112 is directed to
the abstract idea of meal planning. Appellant's Br. 52–57.
Thus, the district court did not err in finding that the

Application claims were directed to a product of nature and an abstract idea.

Bhagat also fails to argue that the additional claim elements such as packaging, labeling, administering, preparing, and computer-automating are not conventional activities that are able to transform the Application into a patent-eligible invention. Instead, she simply asserts that the "claims as a whole are not well-understood" and relies on the absence of a Section 102 rejection for lack of novelty for this proposition. Appellant's Br. 56–57. This is insufficient to preclude the district court from finding on summary judgment that the additional limitations were well-understood and thus insufficient under *Alice* step two to turn the patent ineligible subject matter into a protectable invention. *See Genetic Techs. Ltd v. Merial L.L.C.*, 818 F.3d 1369, 1376 (Fed. Cir. 2016) ("[T]he inventive concept necessary at step two of the *Mayo/Alice* analysis cannot be furnished by the unpatentable law of nature (or natural phenomenon or abstract idea) itself."); *PersonalWeb Techs. LLC v. Google LLC*, 8 F. 4th 1310, 1318 (Fed Cir. 2021) ("[A] new abstract idea is still an abstract idea."). Thus, the district court correctly found that the Application claims were ineligible for patent protection under Section 101.

Finally, the district court's conclusion that the Application's pending claims should alternatively be rejected on Section 103 grounds was proper. Since Bhagat did not oppose the PTO's motion for summary judgment or contradict any of the PTO's undisputed facts, it was not erroneous for the district court to find that the prior art's disclosure of the nutritional formulations in the Application claims in overlapping ranges established a presumption of obviousness that Bhagat failed to overcome. The prior art discloses the same nutrients claimed in Bhagat's Application claims in overlapping dosages, and she fails to put forth facts that would establish teaching away or unexpected results. Bhagat provided no evidence in her motion to strike that the

prior art taught away or led to unexpected results, and on appeal argues that the presence of some formulations in Morris in different dosages of the nutrients taught away and relies on conclusory statements that the results were unexpected. Bhagat's belated arguments are insufficient to preclude summary judgment.

## CONCLUSION

For the reasons stated above, we hold that the district court did not abuse its discretion in issuing any of the challenged orders, did not err in dismissing Bhagat's non-patent claims, and did not err in denying Bhagat's motion to strike the PTO's motion for summary judgment or in granting summary judgment in favor of the PTO.

**AFFIRMED**